Okay, would you like to reserve two, or? Your Honor, I would like to reserve one minute for rebuttal, please. We'll put nine on the clock. Thank you. And may it please the Court, my name is Bill Hooks. I am here on behalf of Ronald Kaiser Jr. this morning. Among the issues that I've raised in our brief, I would like to direct my comments this morning primarily to the issues regarding the district court's orders terminating Mr. Kaiser's self-representation status and the order removing him from the court on the morning of trial. Simply stated, with regard to those issues, our position is that Mr. Kaiser's conduct in the form of speech during this colloquy with the judge did not justify the court's termination of his pro se status and his removal from court. We certainly acknowledge that pro se status is not a license to abuse the dignity of the courtroom, but the case law teaches that in circumstances like this, there is a type of qualitative analysis that has to be undertaken. The judge has to determine whether the conduct or the speech is such that it would make it exceedingly difficult, if not wholly impossible, for the trial proceedings to go forward. And while Mr. Kaiser's comments certainly were disrespectful to the court, they do not give rise to an appropriate conclusion that the trial proceedings could not go forward on that morning. Is it permissible for a district judge in this kind of circumstance, making the decision whether to A, terminate self-representation, and B, whether to exclude a defendant? Is it permissible for a district judge to take into consideration pretrial behavior of the individual? I believe it is permissible under the Fluitt decision, Your Honor. Prior conduct outside of the courtroom, and that was the context in Fluitt where the defendants were, in the judge's opinion, not adequately preparing for trial and not doing the things they needed to be able to actually defend themselves at trial. And the courts in that case indicated that prior conduct can be predictive of court demeanor once the case gets into trial. And there had been some difficulties between this defendant and this judge prior to the termination and exclusion, correct? That is correct, Your Honor. There had been a number of court hearings and discussions in which Mr. Kaiser and the judge engaged in a kind of back-and-forth dialogue where Mr. Kaiser tried to do what he believed an attorney should do. And back in February, before the May trial date, the court had engaged in a FORETA hearing and determined that Mr. Kaiser unequivocally wanted to represent himself and that the judge concluded that he should be permitted to do so. So there was certainly a history between the two where Mr. Kaiser repeatedly tried to elaborate or make his views known to the judge or make complaints about things like not having appropriate access to court documents in the detention facility. And while there was a kind of a rollercoaster series of discussions between Mr. Kaiser and the judge, at no time did the judge say, based on your conduct, I am terminating your right to represent yourself. Despite the tenor or the stridency sometimes of the discussions between Kaiser and the court, the judge continued to permit Mr. Kaiser to represent himself up to the hearing on the morning of trial. There was a pretrial proceeding in which Mr. Kaiser interrupted the proceedings and called the judge crooked. I don't remember the date, but of that hearing, but at one point Mr. Kaiser believed that the judge was actively working against him. What he believed, for the purpose of my question, is probably beside the point. It is correct that Mr. Kaiser interrupted the proceedings more than once and called the judge, quote, crooked, unquote, correct? That is correct. Whether he thought he was justified in doing that or not. And then at another proceeding he interrupted the proceedings to state that he thought that his new counsel and his previous counsel were allies against him. I believe that is correct, that he wanted one of the newly appointed counsel removed because newly appointed counsel ratified or agreed with decisions made by former counsel who had been removed both at his request and I think at Mr. Kaiser's request. And at another pretrial hearing he was laughing during the hearing? That is correct, Your Honor. It doesn't explain the context, but he did laugh during a period of time when the judge was addressing him. Okay. Go ahead. After all of that, again, up until this discussion shortly before the jury was brought into court, the judge determined that despite all of these things, Mr. Kaiser had asserted the right to represent himself and that he would be permitted to do so and that he was capable of going forward as his own attorney. So the conduct, however disrespectful, and certainly, again, we don't suggest that someone in Mr. Kaiser's position has carte blanche to abuse the dignity of the judge or of the courtroom, but the conduct under the teachings of a line of decisions from Illinois v. Allen through Ferretta to decisions from this Court teach that the conduct has to be significantly disruptive before the judge can take options to determine what to do in response to that. The Badger decision instructs that the Court should take means that are that will do the least amount of injury to the rights consistent with maintaining an orderly courtroom environment. The judge here took the most extreme remedy, terminating pro se status and ordering that Mr. Kaiser be removed from the Court. The government addressed the or raised the issue of waiver, for lack of a more precise term, in its brief in the sense that Mr. Kaiser, when he said that would be appropriate, somehow waived his rights in the sense that he agreed with the judge. I submit that it is that the record does not support the conclusion that Mr. Kaiser was affirmatively agreeing that the judge's removal, order that he be removed from court and termination of his rights was an appropriate step. Given the litany and the history between the judge and Mr. Kaiser, it may well be that Mr. Kaiser was saying that would be in keeping with the way I feel I have been treated by your honor throughout these many prior court proceedings. But however we take his statement, that would be appropriate when the judge ordered that he be removed. The record demonstrates clearly that as soon as he could, he was removed from court, the audio-video hookup was established, the judge then began to state on the record what had happened. And to summarize the procedures, Mr. Kaiser immediately objected or propounded an objection, although the judge continued onward and did not let Mr. Kaiser expand on what he was saying. But Mr. Kaiser, through counsel, then informed the court that he apologized, he promised to act appropriately if he was permitted to return to court, but that he wanted to continue to represent himself. So I submit that on the record, Mr. Kaiser did not waive his rights to represent himself and to be present by his response. That would be appropriate. Was this the apology before or after he attempted to interject the notion that one of the victims had molested his son? The apology, Your Honor, came at the first morning of trial, before the evidentiary phase of trial began. The incident to which you refer occurred at the end of the evidentiary phase on the second day of trial after the court read a stipulation. If this can be described as an outburst, it occurred after the apology? Yes, the next day. Okay. One final matter. The court, having heard through counsel that Mr. Kaiser apologized and wished to resume representing himself, the court said, no, it's too late. There is no more flip-flopping. I'm not going to let you keep going back and forth between representation by counsel, you're representing yourself, we're going back and forth. Clearly, that is not supported by the record. Mr. Kaiser unequivocally asserted his right to represent himself throughout, and immediately prior to the judge's comment, I'm not going to let you flip-flop back and forth, Mr. Kaiser had said, again, through Mr. Meyer, his counsel, I want to represent myself. So he was not changing his mind, and the court's finding is in error on that point. Okay. You have a full minute for rebuttal. Thank you. Thank you for your argument. We'll hear from the United States at this time. Mr. Wolf? Good morning, Your Honor. Good morning. Eric Wolf for the United States, and may it please the Court. There is a very large context in this case, which is why we gave the Court as much record material as we did. It goes back a long way. Mr. Kaiser was a very manipulative individual. There's no good way to stop it. You can only hope to contain it. And the district court very methodically followed Illinois v. Allen and Ferretta and this Court's decisions on manipulation of the process and delay. And when we reach the day of trial, the Court knows a lot about Mr. Kaiser and what he's done. They came close to going to trial over a year earlier, and the whole thing got derailed when Mr. Kaiser decides to file a disciplinary complaint against his attorney, digs in his heels, won't work with him, and then he goes off for a competency evaluation. He actually details to the evaluator that he's very familiar with legal proceedings because he's been convicted before, and he had an appeal to the Ninth Circuit, and he knows he can get a tad in reverse, and he goes on and on. Two different evaluators take note of this, that Mr. Kaiser knows a lot about the law and how he can use it to his advantage. And this just escalates. I can't go through all of it, but by the time we reach four days before the final trial that actually goes off, Mr. Hooks has said he was always unequivocal from February of 2007 until the May trial date that he wanted to represent himself. That's not accurate. If you look at the May 3, 2007 hearing, four days before trial, Kaiser comes in and he's basically freaking out. I can't do it. I have these materials that I need to get from my wife in the jail, and they're not helping me, and on and on. He doesn't want to represent himself. They then revisit that the morning of trial. Just as this court has instructed, Judge Haddon gives him one last clear chance to just clear this up, and Mr. Kaiser goes back to the same shenanigans. Well, I'm being forced to. Mr. Meyer, the standby counsel, he's not ready. I'd have him do it, but you've got to give me a continuance. He's playing these games. Judge Haddon says, okay, that's not you're not answering the question. Okay, you're going to be your own lawyer. Now are you going to wear these clothes or not? And Judge Haddon winds up just pleading with him to get a yes or no, and he gives this sarcastic yes or no, and Judge Haddon warns him, if you do that again, you will be removed. And he says, I think that would be entirely appropriate, Your Honor. And actually, Mr. Kaiser had done the same thing months before, where he's sitting in court, and the judge is trying to talk to him, and he just starts declaring, I want to be removed. I want to be removed. Remove me. So this has happened before. There's all this water under the bridge. Okay. So at that point, he's removed. The removal issue is really a nonissue in this case, because as soon as he's removed, he's told repeatedly, you can come back if you promise to behave yourself. And Kaiser comes back through counsel, oh, well, I'll come back if I can represent myself. And Judge Haddon made a finding, which was not an abuse of discretion. It's at SER 2, page 20. Mr. Kaiser is manipulating the process. He's flip-flopping back and forth. Okay. That finding is adequate to terminate someone's pro se status. And that is what he was doing. There's a good opinion. I mean, there are lots of good opinions. But Judge Norris's opinion in Fritz v. Spalding sort of was the first setting forth of, like, how do you deal with a defendant who's, like, you know, the day of trial, seeking pro se status? And the key is delay the purpose. And he lays out some factors. One factor is, is he seeking a continuance? Is it prejudicing the government? You know, how do you weigh this? All those factors run in our favor on Mr. Kaiser. He was manipulating the process. He's a very manipulative individual. The victims had been teed up for trial once before, had to travel to Great Falls. The victim, J.H., discusses this in her letter that's in the PSR, the burden that it put on them to go to trial before. And for the victims to see Mr. Kaiser get all these attorneys and all these continuances and these evaluations and everything, it really, it does, there's a tax on the judicial system. And Judge Haddon recognized that, and he did not abuse his discretion. Roberts. Okay. I think we understand your position. Thank you for coming in today. You have about a minute for rebuttal, counsel. Thank you, Your Honor. With regard to the issue of whether Mr. Kaiser flip-flopped, whether he was equivocal or unequivocal in his assertion of his right to represent himself, in the week prior to trial, there was a hearing before the court, and Mr. Kaiser indicated to the judge that he didn't feel that he could adequately represent himself. And at that time, the court said he would make no change in the orders of the court and that the record was unequivocal that Mr. Kaiser had chosen to represent himself. Now, in the context, Mr. Meyer, standby counsel, had been involved in the case for about a week prior to the start of trial. When trial began that morning, the judge did ask Mr. Kaiser if he wanted to represent himself or if he wanted Mr. Meyer to take over. Mr. Kaiser complained Mr. Meyer hasn't had time. The judge said your choices are clear. You go with Meyer this morning or you represent yourself. Specifically, the judge asked him, do you wish to have Mr. Meyer assume the role of trial counsel? Mr. Kaiser said, I don't believe it would be possible for him to represent me, so I will assume the role. The court said, thank you. You've answered my question. You will represent yourself. So he was unequivocal in his assertions. He was not trying to manipulate the court, and the courts took his responses as unequivocal. You are representing yourself. So there was no flip-flopping. Okay. I want to thank you both for the arguments. It's a very interesting case. It's submitted for decision. And Mr. Hooks, I just want to say for the record, given the history of this case and other counsel, thank you for taking on the case. I can't imagine that a lawyer could argue it any better on behalf of Mr. Kaiser. Thank you very much, Your Honor. Thank you for coming. It's a pleasure to appear before the court. Thank you. All right. Number four on the argument calendar is the United States v. Red Eagle. If counsel will come forward, please.
judges: Nelson, Hawkins, Bybee